```
                    UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS
```

INTERNATIONAL UNION OF            )
OPERATING ENGINEERS, LOCAL        )
98 HEALTH AND WELFARE,            )
PENSION AND ANNUITY FUNDS,        )
ET AL.,                           )
        Plaintiffs                )
                                  )   C.A. No. 09-cv-11607-MAP
           v.                     )
                                  )
RAY HALUCH GRAVEL CO.,            )
        Defendant                 )


## MEMORANDUM AND ORDER REGARDING
## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
### (Dkt. No. 69)

July 25, 2011

PONSOR, D.J.

### I. INTRODUCTION

Following a three-day bench trial in this ERISA action, the court entered judgment in favor of Plaintiffs in the amount of $26,897.41. In addition to this damage award, Plaintiffs seek attorneys' fees and costs of $143,600.44. (Dkt. No. 69.) For the reasons set forth below, the court will allow fees, but at a level substantially below the requested amount.

## II. DISCUSSION

Section 1132 states that in any successful action to recover delinquent contributions under ERISA, "the court shall award the plan . . . reasonable attorney's fees and costs of the action . . . ." 29 U.S.C. § 1132(g)(2)(D). Because this statute does not specify the appropriate fee-shifting methodology, the court will apply the lodestar analysis. See Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 526 (1st Cir. 1991); McGahey v. Harvard Univ. Flexible Benefits Plan, 685 F. Supp. 2d 181, 184 (D. Mass. 2010). The lodestar is determined "by multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure." De Jesus Nazario v. Morris Rodriguez, 554 F.3d 196, 207 (1st Cir. 2009). Prior to making this calculation, the trial court "may adjust the hours claimed to remove time that was unreasonably, unnecessarily or inefficiently devoted to the case" and "may disallow time spent litigating failed claims" as long as those hours were not inextricably tied to the litigation of successful claims. Id.

Here, the hourly rates charged by Plaintiffs' counsel, ranging from $194 per hour to $260 per hour, are not problematic. See McGahey, 685 F. Supp. 2d at 184 (holding that core billing rate of $350 per hour was reasonable and citing cases approving rates ranging from $275 to $350 per hour); accord Dkt. No. 69, Ex. C, Janus Aff. ¶ 5 (noting that these rates are consistent with those commonly charged for such matters in the state of Connecticut, where Plaintiffs' counsel's law firm is based). However, the hourly rates charged for paralegal work, $134 to $141 per hour, are excessive, and the court will reduce these to the more reasonable rate of $100 per hour. See, e.g., In re Neurontin Prods. Liability Litig., No. 04-cv-10981-PBS, 2011 WL 1326407, at *7 (D. Mass. Apr. 5, 2011) (capping paralegal rate at $100 per hour); Ferraro v. Kelley, No. 08-cv-11065-DPW, 2011 WL 576074, at *6 (D. Mass. Feb. 8, 2011) (approving proposed rate of $90 per hour for paralegal work and declining defendants' invitation to reduce rate to $60 per hour). Given the small number of hours billed for paralegal work, this finding has a negligible impact on the

total award, merely reducing paralegal fees from $938.80 to $675.00.

Far more significant to the fee calculation is the prodigious number of attorney hours billed. In this rather uncomplicated case, Plaintiffs billed 494.7 hours of work, involving <u>six</u> different attorneys at a cost of just over $125,000. A substantial reduction of this claim is necessary to set the threshold lodestar figure at a reasonable level, for several reasons.

First, as noted, this was a straightforward case. The core issue was whether a single individual, Martin Jagodowski, should be considered a "classified" employee under the Agreement. Jagodowski testified (without contradiction) as to his job responsibilities while employed by Ray Haluch, Inc. The underlying legal issues were not especially complex. The facts were not extensive, and the trial took place before a judge, not a jury, and lasted only three half-days, from 9:00 a.m. to 1:00 p.m. This case required neither the number of hours nor the number of attorneys devoted to it. <u>See</u> <u>Lipsett v. Blanco</u>, 975 F.2d 934, 938 (1st Cir. 1992) ("[A] court should not hesitate to

discount hours if it sees signs that a prevailing party has overstaffed a case.").

Second, a comparison between Defendants' counsel's hours (billed by one attorney) and Plaintiffs' counsel's hours confirms the court's intuition. While Plaintiffs' counsel seeks compensation for roughly 500 hours, Defendants' counsel reports working 270.6 hours on the same matter. (Dkt. No. 70, Ex. A, Cahillane Aff.) As Defendants correctly note, although the parties' hours "need not be the same . . . the disparity in this case is huge." (Dkt. No. 70, Defs.' Opp'n ¶ 4.)

Third, Plaintiffs' counsel spent many hours pursuing claims that were eventually dropped. Plaintiffs originally sought to collect unpaid contributions on behalf of two other individuals, Todd Downey and William Condon. Yet, on the eve of trial, Plaintiffs abandoned these claims. Based on the submitted time sheets, it is impossible for the court to excise the time spent pursuing claims on behalf of these individuals, which appears considerable. For instance, on June 14 and 15, 2010, Plaintiffs' counsel reviewed documents, prepared for depositions, and then conducted

depositions of both Jagodowski (relevant) and Downey (irrelevant or, at best, marginally relevant). Plaintiffs' counsel did not separate out these tasks, which totaled twenty hours and more than $5,200.

Fourth, the court has uncovered several charges that were excessive or unnecessary. For example, as Defendants note, Plaintiffs expended more than 100 hours and almost $30,000 in preparing and arguing an unsuccessful motion for summary judgment. The outcome of the case turned on a fact-based dispute about the interpretation of the Agreement, which was unsuited for summary judgment. Yet Plaintiffs expended approximately thirty hours on their reply brief alone.

Other elements of the fee claim stand out as excessive. For example, in preparing for and attending a final pretrial conference on February 4, 2011, Plaintiffs' counsel billed 9.6 hours or $2,496. On February 9, 2011, Plaintiffs' counsel spent one hour, or approximately $200, researching the law regarding factors considered in awarding discretionary attorneys' fees under 29 U.S.C. § 1132(g)(1),

which, Plaintiffs now admit, was not relevant to this case. (See Dkt. No. 69, Ex. D, Wagner Aff. ¶ 4.)

Finally, the fee request contains numerous instances in which counsel "communicated with" various clients, including Auditor Shannon, President Melville, the Board of Trustees, and Administrator Lane, among others, in order to update them on the status of the litigation. While communication with clients is appropriate to some degree, the level here exceeded the bounds of reasonableness.

In sum, counsel's effort to eliminate excessive, duplicative, or unnecessary charges from this fee request fell short. See Lewis v. Kendrick, 944 F.2d 949, 956 (1st Cir. 1991) ("Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."). In these circumstances an across-the-board reduction is appropriate. See Adams v. Bowater, No. 00-12-B-C, 2004 WL 1572697, at *7 (D. Me. May 19, 2004) (observing that "a line-by-line consideration of the multitude of time entries presented is not practicable" and discounting sixty percent of hours challenged); OCG Microelectronic Materials, Inc. v.

White Consol. Indust., Inc., 40 F. Supp. 2d 83, 86 (D. R.I. 1999) ("[T]he First Circuit generally approves of such across-the-board discounts . . . .").

Based on the foregoing, the court will reduce Plaintiffs' request by one-third, down to a lodestar of $84,656.50 (including $675 in paralegal fees) or 329.80 attorney hours. A one-third across-the-board reduction accounts for the case's relative lack of complexity, time spent pursuing claims that were dropped before trial, overstaffing, and other excessive or unnecessary charges, and it brings the total at least into something like the same universe of hours charged by Defendants' counsel.

The court's analysis, however, does not end here. A reasonable fee award also "takes into account the quality of the results that the plaintiff obtained." De Jesus Nazario v. Morris Rodriguez, 554 F.3d 196, 207 (1st Cir. 2009). Accordingly, the court "may adjust the lodestar itself, upwards or downwards, based on any of several different factors, including the results obtained and the time and labor actually required for the efficacious handling of the matter." Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 336

(1st Cir. 2008).  As the Supreme Court stated, a further reduction is appropriate if

> the relief, however significant, is limited in comparison to the scope of the litigation as a whole. . . . [W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

Henskley v. Eckerhart, 461 U.S. 424, 436 (1983).

Here, the complaint demanded $35,863.06 on behalf of Martin Jagodowski and another $156,988.54 on behalf of unidentified employees, totaling close to $200,000.  For the reasons set forth in the earlier memorandum, the court awarded Plaintiffs $10,267.11 in delinquent contributions, plus interest and liquidated damages, totaling $26,897.41 -- a fraction of the complaint's demand.  In this light, the lodestar figure (plus costs) is revealed as grossly disproportionate to the actual damages award.  The threshold lodestar figure of $84,656.50, plus $16,688.15 in costs, would make the award four times the total damages obtained and ten times the delinquent contributions.[1]

---

[1] Plaintiffs' requested costs, which include $6,537.00 in audit fees and $10,151.14 in travel costs, as well as other miscellaneous expenses, are reasonable.

While certain cases may justify a fee award substantially larger than the actual damages suffered, this is not one of them.  Consequently, the court will further reduce the award to better reflect the results achieved.  In doing this, the court need not follow a "rigid prescription" and "may either eliminate specific hours or reduce the overall fee to account for the prevailing party's limited success."  <u>United States v. Flash II</u>, 546 F.3d 26, 38 (1st Cir. 2008).  In this case, the latter approach is more appropriate, and the court finds a reasonable attorneys' fee award to be roughly two-thirds of the judgment, or $18,000, plus costs of $16,688.15, resulting in a total award of $34,688.15.

Two final points are in order.  First, counsel on both sides of this case did an adequate job representing their clients' interests; nothing in this memorandum is intended to suggest otherwise.  Second, it is noteworthy that the total award, including costs, amounts to more than three times the delinquent contributions that were recovered.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Attorneys' Fees (Dkt. No. 69) is hereby ALLOWED IN PART. The court hereby awards Plaintiffs attorneys' fees and costs in the total amount of $34,688.15. This case may now be closed.

It is So Ordered.

                                        /s/ Michael A. Ponsor
                                        MICHAEL A. PONSOR
                                        U. S. District Judge